UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BAIS YAAKOV OF SPRING VALLEY, on
behalf of itself and all others similarly situated,

                Plaintiff,                              14-cv-3232 (NSR)
   -against-                                     OPINION & ORDER

GRADUATION SOURCE, LLC, GRADUATION
SOLUTIONS, LP and JESSE ALEXANDER,

                Defendants.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Plaintiff Bais Yaakov of Spring Valley ("Plaintiff") brings this putative class action against Defendants Graduation Source, LLC, Graduation Solutions, LP, and Jesse Alexander (collectively, "Defendants"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and New York General Business Law ("GBL") § 396-aa.

      Before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

      The following facts are taken from Plaintiff's Complaint unless otherwise noted and are accepted as true for purposes of this motion.

      Plaintiff is a New York religious corporation located in Monsey, New York. (Compl. ¶ 6.) Defendants Graduation Source and Graduation Solutions are Nevada entities, a Limited Liability Company and Limited Partnership, respectively, located in Port Chester, New York. (*Id.* ¶¶ 7-8.) Defendant Alexander is purportedly the Vice President of Operations at both

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/2016

entities. (*Id.* ¶ 9.)

On November 5 and 8, 2013, without Plaintiff's consent, Defendants sent unsolicited fax advertisements to Plaintiff's fax machine located in Monsey, New York. (*Id.* ¶ 10-12.) Although the fax advertisements contained a purported opt-out notice as required by the TCPA and GBL § 396-aa, the opt-out notice violated the statutes because it failed to state: (1) "the sender's failure to comply with an opt-out request within 30 days is unlawful" (TCPA violation); (2) "that a recipient's opt-out request will be effective so long as that person does not, subsequent to making such request, provide express invitation or permission to the sender, in writing or otherwise, to send such advertisements" (TCPA violation); and (3) "that a recipient may make an opt-out request by written, oral or electronic means," (GBL violation). (*Id.* ¶¶ 13-15.) Plaintiff alleges that Defendants sent or caused to be sent thousands of unsolicited and solicited fax advertisements for the sale of goods and/or services similar to these fax advertisements, without proper opt-out notices as required by the statutes. (Compl. ¶¶ 2-3, 17-19.)

Plaintiff further alleges that Alexander was personally responsible for designing the fax adverstiments at issue, as well as directing and authorizing their distribution. (*Id.* ¶ 20.) Alexander is described as "the guiding spirt and central figure behind these fax advertisements being sent in the manner in which they were sent." (*Id.*)

## STANDARD ON A MOTION TO DISMISS

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal citation and quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . . ." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). The Court, again, must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture,*

3

*LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citation omitted). Courts also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## DISCUSSION

### 1. Rule 68 Offer

Defendants made an offer of judgment to Plaintiff pursuant to Federal Rule of Civil Procedure 68, purportedly for more than the full relief sought by Plaintiff. Plaintiff neither accepted nor rejected the offer. Subsequent to Defendants seeking to dismiss the Complaint for lack of subject matter jurisdiction on that basis, the Supreme Court held in *Campbell-Ewald Company v. Gomez*, 136 S.Ct. 663 (2016), that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.* at 672. In light of the Supreme Court's holding, Plaintiff's failure to accept or reject the offer does not moot this case.

### 2. Standing

The TCPA prohibits "any person [from] . . . us[ing] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Nevertheless, an unsolicited advertisement sent to a fax machine does not violate the TCPA if the sender can demonstrate that: "(1) the sender has an established business relationship with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*,

4

65 F. Supp. 3d 482, 494 (W.D. Mich. 2014), *as amended* (Jan. 12, 2015) (citing 47 U.S.C. § 227(b)(1)(C)).

Defendants contend that Plaintiff lacks standing to assert its claims because it voluntarily agreed to make its fax number available to the public, purportedly barring recovery under 47 U.S.C. § 227 (b)(1)(C)(ii)(II)[1] ("the sender obtained the number of the telephone facsimile machine through— . . . a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution[.]") Although Defendants direct the Court to a number of websites on which Plaintiff's fax number was purportedly made available to the public, they fail to address the first element of the statute – that Defendants obtained Plaintiff's fax number *through* one of these websites. *See* 47 U.S.C. § 227 (b)(1)(C)(ii). There is likewise nothing in the Complaint, nor in the documents properly before the Court on this motion, which demonstrates that Defendants obtained Plaintiff's fax number through one of these websites. In any event, such a demonstration would likely require a fact-intensive review, which is best left until the summary judgment stage of the proceedings.

Defendants also assert that Plaintiff lacks standing because the parties had an established business relationship prior to Defendants sending the faxes at issue, purportedly barring recovery under the TCPA and New York's GBL. *See* 47 U.S.C. §227(b)(1)(C)(i)(I); N.Y. GBL § 396-aa. Defendants attempt to demonstrate the existence of this preexisting relationship in two ways. First, Defendants cite to language included in each of the faxes at issue that stated "[t]his fax was only intended to be received by those who are current customers or otherwise requested our materials." (Defs.' Mot. at 17.) Second, Defendants rely on the Declaration of Jesse Alexander

---

[1] Defendants appear to incorrectly cite section (b)(1)(C)(i)(II) for this proposition. (*See* Defs.' Mot. at 15.)

5

Rothschild, who states that Defendants have an established business relationship with several Bais Yaakov schools. (*Id.* at 17-18.) Each of these arguments is unavailing.

First, the statement included in each of the faxes, on its own, does not establish or confirm that the parties had a preexisting business relationship. It merely states that the faxes were *intended* for current customers or those who otherwise requested the materials. There is nothing to establish that the faxes were actually sent only to current customers or those who otherwise requested the materials. It would be a significant stretch, particularly at the motion to dismiss stage of this case, to conclude that this statement establishes that Plaintiff was a preexisting customer of Defendants.

Second, the Court may not review Rothschild's Declaration in connection with this motion. The Court's review is limited to "the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). This is not such a document.

Even assuming, *arguendo*, that Defendants obtained Plaintiff's phone number from one of the cited websites and had a pre-existing business relationship with Plaintiff, Defendants do not argue in this motion that the fax advertisements at issue contained a proper opt-out notice, which is required under the TCPA. Instead, Defendants treat the public availability of Plaintiff's fax number and the purported pre-existing business relationship between the parties as independent avenues for dismissal of the TCPA claims, rather than as two of the three requirements needed to satisfy the defense outlined in 47 U.S.C. § 227(b)(1)(C).[2] (Defs.' Mot. at

---

[2] Unlike the TCPA, GBL § 396-aa only requires "a prior contractual or business relationship" to avoid liability under the statute. As discussed above, Defendants fail to show as a matter of law that such a relationship exists.

6

15-18.) That failure alone is sufficient to deny Defendants' motion to dismiss on standing grounds.

Accordingly, Defendants have failed to demonstrate that Plaintiff lacks standing to bring its claims.

### 3. Applicability of the FCC's "Opt-Out Notice" Order

On its face, the TCPA only applies to unsolicited advertisements. Nevertheless, the Federal Communications Commission ("FCC") is authorized by the TCPA to "prescribe regulations to implement the requirements of" the statute. 47 U.S.C. § 227(b)(2). In accordance with this authority, the FCC established regulations requiring an "opt-out notice . . . for all fax advertisements, even if there is an established business relationship or the sender has obtained prior consent." *Stryker Sales Corp.*, 65 F. Supp. 3d at 495 (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005,* 71 Fed. Reg. 25967–01, 25972, 2006 WL 1151584 (2006) ("In addition, entities that send facsimile advertisements to consumers from whom they obtained permission must include on the advertisements their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future.")). Nevertheless, in light of some confusion regarding the application of the opt-out notice requirements to solicited fax advertisements, the FCC released an order on October 30, 2014 (the "2014 Order"), stating that "'some parties who have sent fax ads with the recipient's prior express permission may have reasonably been uncertain about whether [the FCC's] requirement for opt-out notices applied to them' . . . the FCC [provided] a six-month window in which senders of faxes [could] apply for a retroactive waiver of the FCC's opt-out requirement . . . ." *Id.* at 497.

On April 29, 2015, Defendants filed a timely petition with the FCC for a waiver pursuant to the 2014 Order. (*See* Docket No. 45.) The FCC granted Defendants' waiver, along with more than 100 other petitioners, on August 28, 2015 (the "Waiver"). (*See* Docket No. 45, Ex. 2.) The Waiver applied retroactively, providing petitioners with relief "through April 30, 2015. Any non-compliant faxes (*i.e.*, faxes that do not include the required opt-out information) sent after that date [would remain] subject to Commission enforcement and TCPA liability." (*Id.* at ¶ 11.) In light of the Waiver, Defendants now ask this Court to dismiss Plaintiff's claims arising out of purportedly solicited fax advertisements.

Courts that have reviewed the applicability of the 2014 Order and Waiver to TCPA claims have differed in their conclusions. In *Stryker Sales Corp.*, following the release of the 2014 Order but before the issuance of the Waiver, the Western District of Michigan explained that "the FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action; at most, the FCC can choose not to exercise its own enforcement power." 65 F. Supp. 3d at 498. The Court noted that "[i]t would be a fundamental violation of the separation of powers for the administrative agency to 'waive' retroactively the statutory or rule requirements for a particular party in a case or controversy presently proceeding in an Article III court." *Id.*

When the Waiver was ultimately issued, the FCC addressed the "separation of powers" argument raised by the Court in *Stryker Sales Corp.*, and found it unavailing:

> At the outset, we dismiss arguments that . . . granting waivers while litigation is pending violates the separation of powers as several commenter[s] have suggested. As the Commission has previously noted, by addressing requests for declaratory ruling and/or waiver, we are interpreting a statute, the TCPA, over which Congress provided the Commission authority as the expert agency. Likewise, the mere fact that the TCPA allows for private rights of action to enforce rule violations does not undercut our authority, as the expert agency, to define the scope of when and how our rules apply.

(Docket No. 45, Ex. 2, ¶ 13.)

8

The Central District of California had the opportunity to review the FCC's reasoning in *Simon v. Healthways, Inc.*, No. CV1408022BROJCX, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015), and agreed with its conclusion. The Court first recognized the FCC's authority to prescribe and implement regulations in connection with the TCPA. *Id.* at *7 (citing 47 U.S.C. § 227(b)(2)). Pursuant to that authority, and although "the plain language of the TCPA only requires opt-out notice on unsolicited advertisements," the FCC enacted regulation prohibiting the sending of *solicited* advertisements by fax without such notice. *Id.* In light of the FCC's authority to enact this regulation, the Court reasoned that the FCC also had the power to grant a retroactive waiver related to the regulation pursuant to 47 C.F.R. § 1.3, notwithstanding the fact that such a waiver might influence pending litigation. *Id.* Thus, the Court concluded that it was within the authority of the FCC to waive the opt-out notice requirement with respect to solicited advertisements, and that such a waiver could effect pending litigation if the defendants could show that the faxes at issue were actually solicited advertisements. *Id.* ("Whether the retroactive waiver applies to this case therefore necessarily depends upon whether Defendants transmitted the faxes with or 'without that person's prior express invitation or permission.'")

Plaintiff argues that applying the Waiver to this case would violate separation of powers principles; that its applicability is restricted to FCC enforcement actions; and that the FCC lacks the power to retroactively release any statutory liability under the TCPA without explicit authorization from Congress. (*See* Docket No. 47, at 1.)

The cases interpreting the Waiver discussed above are not binding on this Court, and courts within the Second Circuit have not considered the applicability of the Waiver to pending litigation. Nevertheless, the Court is persuaded by the analysis undertaken in *Simon.* The Waiver does not, as Plaintiff contends, retroactively release Defendants from *statutory* liability.

As stated previously, on its face the TCPA only prohibits the sending of unsolicited faxes. It is the FCC's regulation interpreting the TCPA that extends the protections of the statute to solicited faxes. Thus, it is within the FCC's authority to determine when and how to apply this regulation, and to waive it for good cause. *See* 47 C.F.R. § 1.3; *Simon*, 2015 WL 10015953 at *7.

The allegations in the Complaint relate to conduct occurring, at most, between May 5, 2010 and May 5, 2014, the day on which Plaintiff filed its Complaint. (Compl. ¶ 2 (applicable statute of limitations period is four years).) The Waiver applies retroactively from April 30, 2015. (Docket No. 45, Ex. 2, ¶ 11.) Thus, Plaintiff is barred from bringing claims under the TCPA with respect to solicited faxes during the entirety of the period covered by the Complaint. Insofar as Plaintiff's "First Claim For Violation Of The TCPA" requests relief based on solicited fax advertisements, that portion of Plaintiff's claim is dismissed. (Compl. ¶¶ 36-39.)

### 4. Personal Liability

Defendants move to dismiss all claims against Alexander based on Plaintiff's failure to allege that Alexander was the sender of the faxes. Defendants' argument is based solely on their reading of the TCPA and GBL § 396-aa, which purportedly extend liability only to those who "send" or "initiate" unsolicited advertisements, respectively. (Defs.' Mot. at 19.) Plaintiff counters that courts have extended liability to individuals in the TCPA context when "they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (Pl.'s Opp. at 23) (quoting *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011)). Thus, Plaintiff concludes that its Complaint, which alleges that Alexander "specifically, individually and personally directed and authorized all of the fax advertisements . . ., was intimately involved in the program to send these fax advertisements, including the design

10

of the fax advertisements and authorized payment for the sending of those fax advertisements" would state a claim under the statute. (Compl. ¶ 20.)

Although courts in the Second Circuit have yet to weigh in on the issue of personal liability under the TCPA, a number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Universal Elections*, 787 F. Supp. 2d at 416 (reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). In reaching this conclusion, these courts relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898.

Defendants have not proffered any case law supporting their contention that the TCPA should be read so narrowly as to only include individuals who actually sent the unlawful advertisements – in other words the individual who used the fax machine to send the fax or who is identified on the fax as the sender. Surely neither Congress nor the New York State legislature intended to restrict liability under the TCPA in such a way. Moreover, New York follows the same general tort rule regarding the personal liability of corporate officers that formed the basis of the district court decisions cited above. *See, e.g., Peguero v. 601 Realty Corp.*, 58 A.D.3d

11

556, 558 (1st Dep't 2009); *Reynolds v. Lifewatch, Inc.*, No. 14-CV-3575 KMK, 2015 WL 5730792, at *18 (S.D.N.Y. Sept. 29, 2015) (recognizing that *Peguero* permits individual corporate officers or directors to be held liable for affirmative tortious acts). Accordingly, the Court will follow these decisions, and Alexander may be held personally liable for violations of the TCPA if he "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Sandusky Wellness Ctr., LLC*, 2014 WL 1333472, at *3 (quoting *Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898). Plaintiff has alleged as much in the Complaint and its claim therefore survives Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court respectfully directs the Clerk to terminate the motion at ECF No. 32. Defendants are directed to file an answer to the Complaint within 30 days of the date of this Order. The parties are directed to appear for an in-person initial pretrial conference on May 20, 2016 at 12:00 p.m. The parties are reminded that this case has been designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York. The parties should refer to ECF No. 3, submit the Report described in I.A. at least seven days before the conference, and be prepared to discuss the issues set forth in I.B at the conference.

Dated: March 29, 2016  
      White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge