UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG CUNNINGHAM, | :<br>:<br>: |
| Plaintiff, | : Civil Action No.: 17-13050 (FLW) |
| v. | :<br>: **OPINION** |
| CAPITAL ADVANCE SOLUTIONS, LLC et. al., | :<br>:<br>: |
| Defendants. | :<br>: |

**WOLFSON, United States District Judge**:

This matter comes before the Court on three separate motions to dismiss filed by (1) Capital Advance Solutions, LLC ("Capital"), Geoffrey Horn ("Horn"), Charles Betta ("Betta"), and Dan Logan ("Logan"); (2) WebBank Corporation ("WebBank") and Retail Capital, LLC ("Credibly"); and (3) EBF Partners, LLC ("EBF").[1] Specifically, these defendants seek dismissal on various grounds of Plaintiff Craig Cunningham's ("Plaintiff") Amended Complaint, wherein he alleges that Capital, at the direction of the Individual Defendants, violated the Telephone Consumer Protection Act ("TCPA") by contacting Plaintiff's cellular phone through the use of an automated telephone dialing system, on behalf of the Bank Defendants. For the reasons set forth below, the motion to dismiss filed by Capital and the Individual Defendants is **DENIED** as to Capital and **GRANTED** as to the Individual Defendants, and WebBank and Credibly's motion to dismiss is **DENIED**; however, EBF's motion to dismiss is **GRANTED**.

---

[1] For purposes of simplicity, the various groups of defendants shall be referred to as follows: (1) Capital, EBF, WebBank, and Credibly (the "Corporate Defendants"); (2) EBF, WebBank, and Credibly (the "Bank Defendants"); (3) Horn, Betta, and Logan (the "Individual Defendants.").

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for the purposes of this motion to dismiss. Plaintiff, a Tennessee resident, proceeding *pro se*, asserts violations of the TCPA against Capital, a New Jersey corporation, and the entities on behalf of which Capital allegedly conducted telemarketing activities.[2] Specifically, these include EBF, WebBank, and Credibly, all of which are in the business of providing "loan products." Amended Complaint ("Am. Comp."), ¶¶ 2-7, 11. Plaintiff also names Horn, Betta, and Logan as defendants in their individual capacities, all of whom are employed at Capital as corporate officials.[3] *Id.*, ¶¶ 3-5.

In 2015, Plaintiff alleges that he received multiple telephone calls on his cellular phone from Capital, placed through an automated telephone dialing system, at the direction of the Individual Defendants. *Id.*, ¶¶ 16-17. Upon answering, Plaintiff was presented with the following prerecorded message: "[s]top and listen. Do you need immediate cash? Need additional working capital? No collateral? No fixed payments? Bad Credit? No problem. Press 1 to be connected. Press 2 if you are not interested." *Id.*, ¶ 18. Plaintiff claims that he subsequently posed as an interested customer and applied for a loan through Capital after answering "a few qualifying questions," for the sole purpose of identifying the "end users or sellers" on behalf of which

---

[2] Notwithstanding Plaintiff's *pro se* status, he is described as a "professional plaintiff" who has filed over 85 TCPA actions. Capital Advance Solutions Motion to Dismiss ("Capital's Brief"), at 20.

[3] For purposes of completeness, the Court notes that Plaintiff, in the Amended Complaint, also includes the following corporate entity and individuals as named defendants in this dispute: (a) JGRD, Inc.; (b) Brian Ebersole; and (c) Eric Oakley. Am. Compl., ¶¶ 8-10. Moreover, in a section of the Amended Complaint labeled "Liability of Brian Ebersole, Eric Oakley, and JGRD, Inc.," Plaintiff contends that the aforementioned parties "are the actual companies or executives of defunct companies that dialed the calls to the Plaintiff . . . ." *Id.*, ¶ 31. Although such allegations are inconsistent with Plaintiff's prior assertions, in which he alleges that the disputed calls were placed by Capital, the Court, in any event, notes that neither JGRD, nor Brian Ebersole, nor Eric Oakley have moved for dismissal.

Capital was calling Plaintiff. *Id.*, ¶¶ 18, 21-22. Thereafter, Capital allegedly submitted Plaintiff's information to various loan providers, including EBF, WebBank, and Credibly. *Id.*, ¶ 17.

In a letter dated March 1, 2016, Credibly and WebBank denied Plaintiff's loan request. *Id.*, ¶ 22. Moreover, the letter from Credibly and WebBank was written on "Credibly, LLC letterhead," and contained the following language: "[t]hank you for applying to us for credit through Capital Advance Solutions." *Id.* EBF, on the other hand, approved Plaintiff's loan request, and provided Plaintiff with an eighteen-page contract extending a loan in the amount of $30,000. *Id.*, ¶ 23. The contract additionally "included an application from Capital Advance Solutions at the very end indicating that Capital Advance Solutions was the broker that sent the loan to EBF Partners, LLC." *Id.*

On December 13, 2017, Plaintiff initiated the instant action. Thereafter, Plaintiff filed an Amended Complaint, asserting three counts. Specifically, in Count I and Count II, Plaintiff alleges that Defendants' "unsolicited and unwelcome telephone calls" were in violation of §§ 227(c)(5) and (b) of the TCPA, respectively, because Defendants failed to implement a written policy regarding telemarketing, failed to maintain a do-not-call list, and failed to have trained personnel to engage in telemarketing. *Id.*, ¶¶, 49-52. Additionally, in Count III, Plaintiff asserts a claim for invasion of privacy-intrusion on seclusion, alleging that Defendants' actions "constitute multiple intrusions upon the seclusion of the Plaintiff." *Id.*, ¶¶ 53-54.

In the instant matter, Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). In that connection, Capital moves for dismissal on the basis that the TCPA provisions upon which Plaintiff relies are inapplicable to the instant dispute, because Plaintiff has failed to sufficiently allege that the primary use of his cellular phone is for non-business purposes. Moreover, WebBank and Capital separately move

for dismissal, arguing that Plaintiff failed to allege that either entity contacted Plaintiff, and neither entity can be held vicariously liable for Capital's alleged TCPA violations pursuant to an agency relationship. Finally, EBF joins in WebBank and Capital's arguments as to vicarious liability, while EBF separately contends that it is not subject to this Court's personal jurisdiction. Plaintiff opposes Defendants' Motions.

## II. DISCUSSION

### A. Standard of Review

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see* Fed. R. Civ. P. 4(e). Therefore, in resolving a motion to dismiss pursuant to 12(b)(2) for lack of personal jurisdiction, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process; [the Court must] 'look to federal law for the interpretation of the limits on *in personam* jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc.*, 155 F.3d at 259).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945), the Supreme Court held that a state

may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Moreover, in resolving a motion to dismiss under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

B. Analysis

1. The TCPA

The TCPA was passed by Congress to protect consumers from receiving "intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012)). In doing so, "[C]ongress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims*, 565 U.S. at 371. In particular, pursuant to 47 U.S.C. § 227 (b)(1)(B), the TPCA restricts the use of any automated telephone equipment that uses artificial or prerecorded voice to deliver a message to any "residential telephone line[.]" Under the statute, an automated telephone dialing system is defined as equipment that possesses both of the following capabilities: "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

2. Capital[4]

Capital moves for dismissal on the basis that the TCPA provisions upon which Plaintiff's claims are based are inapplicable to the instant dispute. Specifically, Capital contends that 47 U.S.C § 227(c)(5) concerns telemarketing solicitations in connection with "residential telephone subscribers," defined to exclude "subscriber[s] to a telephone exchange service [who constitute] business subscriber[s]." Capital's Brief, at 15-18. However, Capital maintains that Plaintiff's Amended Complaint "fails to allege sufficient facts from which this Court can conclude that "[P]laintiff used his cellular telephone as a residential telephone subscriber," because Plaintiff

---

[4] As a threshold issue, although Defendants contend that Plaintiff's Amended Complaint was filed on March 20, 2018, five days subsequent to the date upon which the deadline expired, in an exercise of discretion, the Court accepts Plaintiff's Amended Complaint as timely. Plaintiff, however, is well advised that he is subject to all the rules and requirements as set forth by the Federal Rules of Civil Procedure.

"has filed at least eighty-five lawsuits nationwide, each stemming from alleged violations of the TCPA." *Id.*, at 19-20. Citing *Stoops v. Wells Fargo Bank*, N.A., 197 F. Supp. 3d 782 (W.D. Pa. 2016), Capital argues that Plaintiff's extensive history of bringing suit pursuant to the TCPA precludes him from qualifying as a "residential telephone subscriber," because they demonstrate that Plaintiff is in the business of "filing TCPA claims[.]" *Id.*

Section 227(c)(5) of the TCPA creates a private right of action for "a [p]erson who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5). Moreover, the referenced regulations pertain to those which the Federal Communications Commission ("FCC") are directed to adopt for the purpose of protect[ing] *residential telephone subscribers*' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added); *see also Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1159-1200 (M.D. Tenn. 2017). Although, in this regard, the FCC is instructed to "compare and evaluate alternative methods and procedures" in order to protect subscribers' privacy rights, § 227(c)(3) of the TCPA explicitly references the implementation of "a single national database" that "compile[s] a list of telephone numbers of *residential subscribers* who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase." 47 U.S.C. § 227(c)(1)(a), (c)(3) (emphasis added).

Here, at this juncture of the litigation, Plaintiff has sufficiently pled that his cellular phone is used for residential purposes. Capital's reliance on *Stoops* is premature; indeed, the court's ruling, there, was made in connection with the telemarketing defendants' motion for summary judgment. Specifically, the *Stoops* Court found that the plaintiff lacked standing to

7

pursue her TCPA claims, because the plaintiff purchased the contacted cellular telephones to solely receive calls from telemarketers. *Stoops,* 197 F. Supp. at 799-802. In so holding, the court cited extensive portions of the plaintiff's deposition testimony, during which she expressly conceded that "her only purpose in using her cell phones is to file TCPA lawsuits[.]" *Id.* at 800. Notably, based upon the plaintiff's own admission, the *Stoops* court ruled that the plaintiff's claims pursuant to the TCPA did not arise from "unwanted calls," or calls which were considered "a nuisance and an invasion of privacy." *Id.* (citations and quotations omitted). These circumstances, as the court found, justified an award of summary judgment in favor of the telemarketing defendants.

Unlike *Stoops*, the parties, here, are in the beginning stages of litigation. Indeed, Capital presumes, prior to the exchange of discovery, that Plaintiff's cellular phone is primarily used for non-residential purposes, because Plaintiff has filed a significant amount of TCPA lawsuits. Capital's Brief, at 20 ("Essentially, [P]laintiff is in the business of filing TCPA lawsuits."). Although Capital may ultimately substantiate these contentions subsequent to the exchange of discovery, the dismissal of Plaintiff's TCPA claim on this basis, with nothing more, is not proper at this stage of litigation. In fact, unlike *Stoops*, wherein the plaintiff admitted that her cellular phones were only used for the purpose of receiving telemarketing calls, Plaintiff, here, has identified various non-business purposes for which he utilizes his cellular phone. Specifically, Plaintiff pleads that Capital contacted his cellular telephone which he requires for the following purposes:

> personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text message. The Plaintiff further has

8

his cell phone from his personnel accounts, and the phone is not primarily used for any business purpose.[5]

Am. Compl., ¶ 33. Plaintiff's allegations, in this regard, are consistent with the use of a "residential telephone," and are sufficient for the purposes of permitting his TCPA claims to proceed past the dismissal stage of litigation. *Abramson v. Oasis Power LLC*, No. 18-0479, 2018 U.S. Dist. LEXIS 129090, at *17 (W.D. Pa. July 31, 2018) (finding that *Stoops* failed to justify the dismissal of the plaintiff's TCPA claims, despite Plaintiff having a "prolific history" of filing such lawsuits, because the *Stoops* decision was rendered at "*the summary judgment stage after discovery*") (emphasis in original). Accordingly, Capital has failed to raise a proper basis upon which to dismiss Plaintiff's TCPA claims at this juncture. Indeed, I note Capital has not raised any other arguments on the merits.

### 3. The Individual Defendants

However, Plaintiff has not alleged a valid TCPA claim against the Individual Defendants. Notably, in *City Select Auto Sales Inc. v. David Randall Assocs.,* the Third Circuit expressed significant "doubts" as to whether personal liability can attach to a corporate officer pursuant to the TCPA. 885 F.3d 154, 162 (3d Cir. 2018). Despite such reservations, for the purpose of that appeal, the Third Circuit assumed, without deciding, that a corporate officer may be held personally labile for a corporation's TCPA violations pursuant to the common law's "personal-

---

[5] Moreover, these allegations are sufficient to distinguish the instant matter from *Cunningham,* a case cited by Defendants. Specifically, the court, there, dismissed Plaintiff's TCPA claims, on the basis that Plaintiff "pled no facts" to support that the telemarketing defendants contacted a cellular phone which Plaintiff used for residential purposes. *Cunningham*, 251 F. Supp. at 1201. Plaintiff's assertions, as pled in the Amended Complaint, are different than those in the previous case.

9

participation" theory.[6] *Id*. Under the assumption that "personal-participation liability is in fact available under the TCPA," the Third Circuit held that a corporate officer may be personally liable pursuant to the statute, in the event that the officer "had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Id*. at 162 (citations omitted). In other words, the Third Circuit reasoned that a corporate officer, under such a theory, if applicable, may be personally liable if the officer "actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct." *Id*. (citation omitted).

Here, to the extent that the TCPA provides a basis for filing suit against a corporate officer in that officer's individual capacity, Plaintiff's allegations in support thereof fail to demonstrate that the Individual Defendants were more than "tangentially involved" with the complained of telemarketing calls. Rather, Plaintiff advances generic, conclusory statements which presume that the Individuals Defendants personally "authorized," "oversaw and "directed" the challenged telemarketing calls, based solely upon their status as corporate officials. Am. Comp., ¶¶ 28-30. Because Plaintiff's general and conclusory allegations need not be accepted under a 12(b)(6) standard, Plaintiff's claims against the Individual Defendants are dismissed. *Cunningham*, 251 F. Supp. at 1201 (finding that Plaintiff's allegations in connection with the individual defendants failed to detail "any individual actions that would support [their] personal liability beyond the generic assertions that [the individual defendants, as corporate officials, were] ultimately responsible for [the company's] involvement in any actionable calls.").

    4.  **EBF & Credibly/WebBank**

---

[6] Specifically, the Third Circuit refrained from articulating a definitive ruling on this issue, because the parties in the underlying action "neither litigated [it]," nor was the issue "fully briefed and argued on appeal." *City Select Auto Sales Inc.*, 885 F.3d at 161.

At the outset, I note that Plaintiff did not allege that the Bank Defendants violated the TCPA by directly contacting his cellular phone through the use of an automated telephone dialing system. Rather, to establish liability against these entities, Plaintiff alleges that they are vicariously liable for the acts of their agent, Capital. In that regard, Credibly and WebBank argue that, because "Plaintiff has failed to sufficiently plead the existence of any principal-agent relationship between [the Bank Defendants] and Capital," Plaintiff's TCPA claims must be dismissed. WebBank and Credibly's Brief In Support of Dismissal ("WebBank and Credibly's Brief"), at 5-11. Moreover, while EBF likewise maintains that Plaintiff has failed to demonstrate a proper basis upon which to establish vicarious liability, EBF separately contends that dismissal is appropriate for lack of personal jurisdiction. EBF Partners, LLC's Brief in Support of Dismissal ("EBF's Brief"), at 9. The Court first addresses the parties' contentions with respect to the issue of agency, prior to a determination of whether jurisdiction over EBF is proper.

As the Supreme Court has held, "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"). Moreover, in *Campbell-Ewald Co.*, the Supreme Court, adopting a ruling issued by the FCC, found that the principles of vicarious liability and the traditional federal-common law theories of agency are applicable within the context of TCPA violations. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (finding "no cause to question" the FCC's ruling in *Dish Network*); *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013).

The Supreme Court's guidance confirms that a party may be vicariously liable for prohibited conducted pursuant to the TCPA, such that a "seller or creditor cannot shield itself from liability simply by outsourcing telemarketing or collection calls to a third party." *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *28 (W.D. Pa. June 29, 2016). To the contrary, a party may be vicariously liable for conduct prohibited by the TCPA pursuant to federal common-law theories of agency, and the determination of such requires a reviewing court to consider the nature of the defendant parties' relationship. *See City Select Auto Sales, Inc.*, 2014 U.S. Dist. LEXIS 134040, at *22 ("Other courts that have addressed vicarious liability under the TCPA have . . . applied federal common law agency principles to determine vicarious seller liability for violations of the TCPA.") (citing cases); *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017) ("Vicarious liability under the TCPA may be established under a broad range of agency theories[.]").

In this regard, vicarious liability may be established through the following agency theories: (a) actual authority; (b) apparent authority; and (c) ratification. As to the first theory, "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013) (citation and quotations omitted). Moreover, as to the second theory, "[a]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Id.* (citation and quotations omitted). Finally, as to the third theory, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual

authority." Restatement Third of Agency, § 4.01 (2006). Notably, a plaintiff is only required to demonstrate one of the common law agency theories in order to hold a defendant vicariously liabile for another defendant's alleged TCPA violations.

Here, while the Bank Defendants admit that the principles of vicarious liability are applicable within the context of this action, they, nevertheless, contend that Plaintiff has failed to plead a cognizable theory under agency law. However, the Court finds that Plaintiff's allegations, at this stage of the litigation, are sufficient for the purpose of asserting a claim of vicarious liability against the Bank Defendants in connection with Capital's alleged telemarketing calls, under actual authority, *i.e.,* "one party consent[ing] to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Covington*, 710 F.3d at 120.

In the Amended Complaint, Plaintiff asserts that a contractual agreement governs the relationship of the Bank Defendants and Capital, pursuant to which "[Capital] conduct[s] marketing and obtain[s] customers for [the Bank Defendants] that are interested in obtaining loan products from [the Bank Defendants] through [Capital.]" Am. Compl., ¶ 15. Plaintiff further asserts that, pursuant to the parties' agreement, Capital places telemarketing calls "for the ultimate benefit of [the Bank Defendants,]" and, in exchange, Capital receives "commission fees for each and every" successful solicitation. *Id*., ¶¶ 15, 17. Moreover, the Amended Complaint alleges that Plaintiff ultimately applied for a loan through Capital, and Capital subsequently submitted Plaintiff's application to the Bank Defendants for consideration. Indeed, in a letter rejecting Plaintiff's loan application, defendants Credibly and WebBank included the following language: "[t]hankyou for applying to us for credit through Capital Advance Solutions[.]" *Id.*, ¶ 22. Likewise, EBF, which approved Plaintiff for a loan, provided Plaintiff with a contract which

"included an application from Capital Advance Solutions . . . indicating that Capital Advance Solutions was the broker that sent the loan to EBF Partners, LLC." *Id*., ¶ 23.

Based upon these allegations, the Court may reasonably infer that the Bank Defendants exercised a certain level of control over, or, at a minimum, were aware of, Capital's telemarketing efforts. In this regard, based on the existence of an alleged agreement, the Bank Defendants contracted with Capital to conduct telemarketing activities and, in so doing, provided Capital with the actual authority to solicit their products. According to Plaintiff, Capital was authorized to procure loan applications on behalf of the Bank Defendants by placing telemarketing calls to potential clients, and Capital submitted the loan applications to the Bank Defendants. It is reasonable to infer that the Bank Defendants "directed" Capital to engage in these efforts pursuant to the contract with Capital, of which the Bank Defendants were the ultimate beneficiaries. *Covington*, 710 F.3d at 120. Accordingly, the circumstances, as alleged, demonstrate an agency relationship between the Bank Defendants and Capital which adequately supports Plaintiff's claims of vicarious liability on the part of the Bank Defendants. *Dobkin v. Enter. Fin. Group*, No. 14-1989, 2014 U.S. Dist. LEXIS 123317, at *10-11 (D.N.J. Sept. 3, 2014) (holding that an "outsourcing arrangement in which [one defendant] had actual authority to sell [another defendant's] products through telemarketing calls" is indicative of an agency relationship); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-6131, 2014 U.S. Dist. LEXIS 91116, at *10 (E.D. Pa. July 3, 2014) (finding a plausible claim of vicarious liability where the plaintiff alleged that the disputed "robocall was made pursuant to a contract"); *Cunningham*, 251 F. Supp. at 1199 (finding a cognizable agency relationship where Plaintiff "alleged an unlawful telemarketing scheme the end result of which was the generation of business for [the

defendant,]" despite the fact that Plaintiff "has not alleged every detail of the relationship between the [d]efendants" at the pleadings stage.).[7]

Having determined that an agency relationship has been pled, the Court proceeds to address whether jurisdiction may be exercised over EBF.[8] "There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37-38 (3d Cir. 2015). For a corporation, the "paradig[m] . . . bases for general jurisdiction" are its place of incorporation and principal place of business. *Daimler AG*, 571 U.S. at 137. However, while a corporation may also be subject to general jurisdiction in a forum other than where it is incorporated or has its principal place of business, such circumstances are "exceptional" and only appropriate when the following condition is met: the corporation's "affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id*. at 122. (quoting *Goodyear*, 564 U.S. at 919).

In the absence of "continuous and systematic" contacts warranting the exercise of general jurisdiction, a plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc.*, 155 F.3d at 259 (citation

---

[7] Although defendants Credibly and WebBank dispute that Plaintiff sufficiently demonstrated the required level of control over Capital, the Court rejects this argument for the reasons provided *supra*. Moreover, to the extent that Credibly and WebBank maintain that Capital is employed as an independent contractor, a determination of this nature requires the Court to make findings of fact, which are not appropriate at the dismissal stage of litigation. Accordingly, Plaintiff's allegations, as pled in the Amended Complaint, are sufficient for the purposes of asserting a claim for vicarious liability.

[8] As further discussed *infra*, although EBF is not subject to the Court's personal jurisidciton, neither Credibly nor WebBank raise a jurisdictional challenge to Plaintiff's TCPA claim on this motion. These entities are deemed to have waived any objection in connection with personal jurisdiction. *Azubuko v. E. Bank*, 160 Fed. Appx. 143, 146 (3d Cir. 2005) ("This Court has held that because personal jurisdiction may be conferred by consent of the parties, expressly or by failure to object, . . . a court may not *sua sponte* dismiss for want of personal jurisdiction, at least where a defendant has entered an appearance by filing a motion.") (citation and quotations omitted).

omitted). In this regard, establishing specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 320).

Here, Plaintiff fails to provide an adequate basis upon which to exercise personal jurisdiction over EBF. First, I find that the requirements of general jurisdiction are not met. In this regard, EBF is not incorporated, nor does it maintain a principle place of business in New Jersey. To the contrary, EBF's employees, offices, and business accounts are all located outside of that state, and, therefore, such grounds fail to provide a basis upon which to find general jurisdiction. Affidavit of Tracy Parks (dated April 17, 2018) ("Parks Cert."), ¶¶ 3-7. Moreover, although, in an "exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature to render the corporation at home in that State," Plaintiff's Amended Complaint does not allege that EBF's activities within New Jersey rise to such a level. *Daimler AG,* 571 U.S. at 139 n.19. Accordingly, EBF is not subject to the Court's general jurisdiction.

Notwithstanding the absence of allegations demonstrating general jurisdiction over EBF, Plaintiff attempts to establish jurisdiction over EBF on the basis of specific jurisdiction. In this regard, Plaintiff maintains that EBF purposefully availed itself of the protections of New Jersey by "conducting business" with Capital to solicit EBF's loan products, as a result of which Capital

contacted Plaintiff's cellular phone. Plaintiff's Opposition ("Pl.'s Opp."), at 8. Indeed, Plaintiff argues that specific jurisdiction is present, because Capital's "illegal telemarketing" activities arise from a contractual agreement with EBF. *Id.* at 8-9. However, Plaintiff's contentions fail to satisfy his burden of establishing jurisdiction.

Within the context of agency relationships, the Third Circuit has found: "[a]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction." *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993) (citation omitted); *see also Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1226 n.5 (rejecting the defendant's argument "that the contacts of their agent with the forum state cannot be attributed to them.") (citations omitted). As a threshold issue, although Capital's telemarketing activities may be imputed to EBF, the parties' agency relationship, with nothing more, is not sufficient to subject EBF to the Court's specific jurisdiction: "[t]he mere fact that a principal-agent relationship exists does not confer personal jurisdiction over a nonresident principal." *Scott v. Lackey*, No. 02-1586, 2010 U.S. Dist. LEXIS 4350, at *35 (M.D. Pa. Jan. 20, 2010) (citation omitted); *see also Rychel v. Yates*, No. 09-1514, 2011 U.S. Dist. LEXIS 38824, at *38 (W.D. Pa. April 11, 2011); *Alcoa Inc. v. Alcan Inc.*, No. 06-451, 2007 U.S. Dist. LEXIS 51565, at *8 (D. Del. July 17, 2007); *Myelle v. Am. Cyanamid Co.*, No. 92-5243, 1993 U.S. Dist. LEXIS 3977, at *6 (E.D. Pa. Apr. 1, 1993); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1464 (D. Del. 1991). Rather, Plaintiff, in order to satisfy his jurisdictional burden, must demonstrate that EBF purposefully availed itself of the privilege of conducting business in the forum state of New Jersey through the actions of its agent, *i.e.*, Capital.

In that connection, Plaintiff alleges that EBF contracted with Capital for marketing purposes and obtaining additional customers. Am. Compl., ¶ 15. However, Plaintiff's allegations

are not sufficient. The Amended Complaint does not explicitly assert that Capital directed its telemarketing activities towards New Jersey, as a result of its contractual agreement with EBF. Nor can the Court reasonably infer that Capital's telemarketing efforts targeted this state. Indeed, while Plaintiff avers that he was the recipient of Capital's solicitations, the contacted phone number is associated with an area code in Tennessee, the state in which Plaintiff resides. *Id.*, ¶ 1. Moreover, at bottom, Plaintiff does not assert that he was located in New Jersey during the time Capital allegedly contacted his cellular phone. Therefore, because Plaintiff has failed to sufficiently allege that Capital conducted "marketing activities" which "targeted the forum state of New Jersey," Plaintiff's claims against EBF are dismissed for lack of personal jurisdiction.[9] *Int'l Playthings LLC*, 2013 U.S. Dist. LEXIS 186779, at *14 (citing *O'Connor*, 496 F.3d at 317).

## III. CONCLUSION

For the reasons set forth above, the motion to dismiss filed by Capital and the Individual Defendants is **DENIED** as to Capital and **GRANTED** as to the Individual Defendants, and WebBank and Credibly's motion to dismiss is **DENIED**; however, EBF's motion to dismiss is **GRANTED**.

---

[9] In addition to its contract with Capital, Plaintiff argues that EBF has "purposefully availed" itself of the benefits and protections of New Jersey because it allegedly "mak[es] loans" and "market[s]" to business in New Jersey. Am. Compl., ¶ 14. However, these grounds fail to provide a basis for finding specific jurisdiction, because the Third Circuit requires that a plaintiff's "claim . . . be one which arises out of or results from the defendant's forum-related activities[.]" *Budget Blinds, Inc. v. White*, 536 F.3d 244, 260 (3d Cir. 2008) (citation omitted). Here, Plaintiff's TCPA claim against EBF does not arise from the loan services which EBF is alleged to have provided in New Jersey. Indeed, Plaintiff concedes that the instant action is unrelated to the following: "EBF's offer for credit that was emailed [to Plaintiff], nor is the Plaintiff suing [EBF] because they mailed the Plaintiff a contract for a loan." Pl.'s Opp., 8. Likewise, Plaintiff, whose cellular phone was contacted in Tennessee, cannot demonstrate that his TCPA claim arose from EBF's alleged marketing "to businesses *in New Jersey*." Thus, these additional grounds are without merit.

Dated: November 20, 2018

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge